# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNIVERSITY COMMUNITY HOSPITAL, INC. D/B/A ADVENTHEALTH CONNERTON 9441 Health Center Drive Land O' Lakes, FL 34637, <br><br> Plaintiff, <br><br> v. <br><br> XAVIER BECERRA, Secretary United States Department of Health and Human Services 200 Independence Avenue, S.W. Washington, DC 20201, <br><br> Defendant. | Civil Action No. 23-3454 |

## COMPLAINT FOR REVIEW OF AGENCY ACTION

## INTRODUCTION

1. This case is about the decision of the Centers for Medicare & Medicaid Services ("CMS") upholding a two percent reduction to the Plaintiff's fiscal year ("FY") 2020 annual payment update for an alleged violation of the Medicare Long Term Care Hospital Quality Reporting Program ("LTCH QRP"). The Provider Reimbursement Review Board ("PRRB") affirmed this decision, and the CMS Administrator declined review.

2. The Plaintiff received the PRRB's decision on September 27, 2023. When the CMS Administrator declined to review the PRRB's decision, the PRRB's decision became the final agency decision, pursuant to which the Plaintiff now files this Complaint. The PRRB's decision is attached hereto as **Exhibit A** and the CMS Administrator's letter declining review is attached hereto as **Exhibit B**.

3. The Plaintiff timely submitted <u>all</u> required quality data to CMS by the applicable deadlines for the reporting period. CMS imposed the payment reduction based on purportedly incomplete or missing data for four measures. However, the Plaintiff reported the data for each of these measures by the applicable deadlines to the agency's appointed reporting system, the National Health Safety Network ("NHSN") operated by the Centers for Disease Control and Prevention ("CDC"). The Plaintiff clearly reported its quality data on time, but a typo or technical issue led CMS to believe that some data were missing.

4. As a result of the two percent payment penalty affirmed by the PRRB, the Plaintiff's Medicare reimbursement was reduced by approximately $256,885 in FY 2020.

5. By filing this Complaint, Plaintiff requests that the Court reverse the PRRB decision and direct the Defendant to reimburse the Plaintiff in full, plus interest, for its FY 2020 Medicare payments without the LTCH QRP two percent penalty.

## JURISDICTION AND VENUE

6. This action arises under Title XVIII of the Social Security Act, as amended, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Act") and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*

7. This Court may exercise subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1395oo(f)(1).

8. Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(e)(1).

9. This Court has authority to grant the relief requested under 42 U.S.C. § 1395oo(f).

## PARTIES

10. University Community Hospital, Inc. d/b/a AdventHealth Connerton, a subsidiary

of Adventist Health System Sunbelt Healthcare Corporation, operates a Medicare-certified long term care hospital ("LTCH") (Medicare Provider No. 10-2026) in Land O' Lakes, Florida.

11. Defendant Xavier Becerra ("Secretary") is the Secretary of the United States Department of Health and Human Services ("HHS") and is sued in his official capacity. The Secretary is responsible for the administration of the Medicare program. The Secretary exercises the administrative responsibility of the Medicare program primarily through CMS, an agency of HHS. The Secretary also contracts with private organizations to act as Medicare Administrative Contractors ("MACs") that process claims for Part A of the Medicare program. First Coast Services Options, Inc. was the Medicare-contracted MAC for the Plaintiff's hospital during the relevant period.

## THE MEDICARE PROGRAM

12. The Medicare Act established a system of health insurance for the aged and disabled. *See* 42 U.S.C. §§ 1395 *et seq*. The Medicare program is federally funded and is administered by the Secretary through CMS. *See* 42 U.S.C. § 1395kk.

13. Plaintiff entered into a written agreement with the Secretary to provide hospital services to eligible individuals as a "provider of services" under the Medicare Act. *See* 42 § U.S.C. 1395cc.

14. Section 3004(a) of the Patient Protection and Affordable Care Act of 2010 amended section 1886(m) of the Medicare Act (42 U.S.C. § 1395ww(m)), to direct the Secretary to establish quality reporting requirements for LTCHs.

15. The purpose of the LTCH QRP is "to promote higher quality and more efficient health care for Medicare beneficiaries . . . ." FY 2012 IPPS/LTCH PPS Final Rule, 76 Fed. Reg. 51476, 51743 (Aug. 18, 2011). CMS uses the LTCH QRP to "efficiently collect information on

valid, reliable, and relevant measures of quality and to share this information with the public, as provided under section 1886(m)(5)(E) of the Act." *Id.* at 51744.

16. As part of the LTCH QRP, CMS requires LTCHs to submit quality reporting data for the NHSN measures to the CDC. This data is ultimately intended to provide consumers with quality of care information to enable them to make more informed decisions regarding their health care, while encouraging hospitals and clinicians to improve the quality of care provided to all patients. *See* 76 Fed. Reg. at 51743–50.

17. LTCHs must submit the required quality reporting data for the NHSN measures through the CDC's NHSN computer system before the quality reporting deadline for each calendar quarter.

18. An LTCH that fails to submit quality data for the reporting period associated with the LTCH QRP fiscal year is subject to a two percent reduction to its Medicare Annual Payment Update. *See* 42 U.S.C. § 1395ww(m)(5)(A)(i).

19. An LTCH that wishes to appeal the two percent reduction of its Medicare payments under the LTCH QRP may file a request for reconsideration with CMS. The LTCH QRP statute, at 42 U.S.C. § 1395ww(m)(5), does not address the reconsideration process. Instead, the process for appealing the two percent payment penalty for noncompliance with the LTCH QRP was first adopted in the preamble of the FY 2014 IPPS/LTCH PPS Final Rule. *See* 78 Fed. Reg. 50495, 50886-87 (Aug. 19, 2013).

20. CMS adopted and finalized LTCH QRP reconsideration and appeal procedures for the FY 2017 payment determination and subsequent years in the FY 2016 IPPS/LTCH PPS Final Rule. 80 Fed. Reg. 49326, 49755 (Aug. 17, 2015). Now partially codified at 42 C.F.R. § 412.560(d), this regulation states that the reconsideration process requires CMS to reverse the

initial finding of noncompliance if the reasons for requesting reconsideration are supported by "documentation that demonstrates compliance of the long-term care hospital with the quality reporting requirements." 42 C.F.R. § 412.560(d)(2)(vii). There must be "sufficient evidence of compliance" with the LTCH QRP. *Id.* CMS refers to the FY 2015 IPPS/LTCH PPS Final Rule, 79 Fed. Reg. 49854, 50317-18 (Aug. 22, 2014), for a full explanation of the reconsideration process that applies to the FY 2017 payment determination *and subsequent years*. 80 Fed. Reg. at 49755.

21. The preamble to the FY 2015 IPPS/LTCH PPS Final Rule explains that LTCHs requesting reconsideration of an LTCH QRP payment penalty are "required to submit all supporting documentation and evidence demonstrating: (1) Full compliance with all LTCHQR Program reporting requirements during the reporting period; or (2) extenuating circumstances that affected noncompliance if the LTCH was not able to comply with the requirements during the reporting period." 79 Fed. Reg. at 50317. "The documentation and evidence may include copies of any communications that demonstrate its compliance with the program's requirements, as well as any other records that support the LTCH's rationale for seeking reconsideration." *Id.* CMS provides a sample list of acceptable supporting documentation and evidence, as well as instructions for LTCHs to retrieve copies of the data submitted to CMS for the appropriate program year, in a document on its Web site at: https://www.cms.gov/medicare/quality/long-term-care-hospital/ltch-quality-reporting-reconsideration-and-exception-extension.

22. According to CMS, "supporting documentation" may include any of the following: proof of submission, e-mail communications, data submission reports from the Internet Quality Improvement Evaluation System ("iQIES"), data submission reports from the NHSN, proof of previous waiver approval, notice of CCN (provider number) activation after the

reporting quarter, or other documentation supporting the rationale of the reconsideration request.

23.     If after reconsideration CMS upholds its determination, and if the LTCH meets the requirements set forth in 42 U.S.C. § 1395oo(a), the LTCH may file a request for a hearing before the PRRB. *See* 42 U.S.C. § 1395oo(a); 42 C.F.R. § 412.560(e).

24.     The PRRB is a five member administrative tribunal that sits in Baltimore, Maryland and decides disputes between Medicare providers and CMS over the amount of reimbursement owed by the Medicare program for services rendered to Medicare patients. *See generally* 42 U.S.C. § 1395oo.

25.     The PRRB has the power to affirm, modify, or reverse the Secretary's findings on each issue under appeal. *See* 42 C.F.R. § 405.1869(b)(1)(i).

26.     A PRRB decision is final unless the CMS Administrator, on her own motion or on appeal by the provider within 60 days after the provider is notified of the PRRB decision, reverses, affirms, or modifies the PRRB's decision. *See* 42 U.S.C. § 1395oo(f)(1).

27.     If the CMS Administrator declines to review or reverse the PRRB decision, a provider may seek judicial review of the PRRB's final decision by filing a lawsuit in the United State District Court within 60 days of receipt of the PRRB decision. *See* U.S.C. § 1395oo(f); 42 C.F.R. § 405.1877.

**FACTS SPECIFIC TO THIS CASE**

28.     CMS reduced the Plaintiff's Medicare payments for FY 2020 by two percent because the Plaintiff allegedly did not submit data for the Catheter-Associated Urinary Tract Infection ("CAUTI") Outcome Measure (NQF #0138) for March and April 2018, the Central Line-Associated Blood Stream Infection ("CLABSI") Outcome Measure (NQF #0139) for March and April 2018, the Ventilator-Associated Event ("VAE") Outcome Measure for March

and April 2018, and the Facility-Wide Inpatient Hospital-Onset *Clostridium difficile* Infection ("CDI") Outcome Measure (NQF #1717) for May and June 2018. CMS instituted this penalty even though the Plaintiff submitted this quality data on time.

29.     The Plaintiff received a form letter dated July 16, 2019, from the Center for Clinical Standards and Quality at CMS, alleging that the Plaintiff was not in compliance with the requirements of the LTCH QRP for the FY 2020 payment determination. Specifically, the letter stated that the Plaintiff was subject to a two percent reduction to its Medicare payments in FY 2020 because the Plaintiff did not submit complete data for the CAUTI, CLABSI, CDI, and VAE measures for all required months. The letter did not specify any of the calendar months or quarters for which the data were allegedly not submitted, or any other specific basis for the two percent reduction to the Plaintiff's Medicare payments.

30.     The Plaintiff's Director of Quality timely submitted all required quality data for the NHSN measures during the reporting period using the CDC's NHSN system. The reporting deadline for the March CAUTI, CLABSI, and VAE data was August 15, 2018. The reporting deadline for the April CAUTI, CLABSI, and VAE data was November 15, 2018. The reporting deadline for the May and June CDI data was November 15, 2018. The Plaintiff submitted the quality data at issue prior to each of these reporting deadlines.

31.     On July 11, 2019, one day after receiving an initial notice of noncompliance from the MAC, the Plaintiff's Director of Quality contacted the NHSN Helpdesk to obtain more information regarding the alleged noncompliance with the LTCH QRP requirements. The Helpdesk confirmed that the NHSN had the Plaintiff's CLABSI, CAUTI, VAE, and CDI data for the third quarter of 2018. However, the Helpdesk also claimed the first quarter and second quarter data at issue were not sent from the NHSN to CMS because they were not selected in the

Plaintiff's monthly reporting plans in the NHSN system.

32. At the time Plaintiff reported the quality data, the Plaintiff's monthly reporting plans included the CLABSI, CAUTI, VAE, and CDI measures. The Plaintiff's standard practice was to create the monthly reporting plans for the entire year at the start of the new QRP reporting year in October. Each month the Plaintiff verified that all event data were in the NHSN system, and each quarter the Plaintiff reviewed NHSN reports confirming that the Plaintiff reported all events for the LTCH QRP measures. Prior to each reporting deadline, the Plaintiff also confirmed that the NHSN system was not showing any warnings or "flags" regarding the submitted data. For the CAUTI, CLABSI, VAE, and CDI data at issue, the NHSN system did not provide the Plaintiff with any message, notification, or other alert indicating that these timely submitted data would not be transmitted from the NHSN to CMS. Accordingly, if any data were not transmitted within HHS, from the CDC to CMS, it was only because some of the boxes for the Plaintiff's monthly reporting plans became unchecked in NHSN. This was either a typo or a technical issue with the NHSN.

## PROCEDURAL HISTORY

33. On August 7, 2019, the Plaintiff appealed the two percent payment penalty by submitting a request for reconsideration to CMS. In its appeal, the Plaintiff explained that all required quality data were timely submitted for the CAUTI (NQF #0138), CLABSI (NQF #0139), CDI (NQF #1717), and VAE outcome measures. The Plaintiff's request for reconsideration included data submission reports showing that the Plaintiff timely reported all quality data during the reporting period using the required NHSN system.

34. On September 11, 2019, CMS issued a reconsideration decision upholding its original decision to impose a two percent reduction to the Plaintiff's FY 2020 Medicare

payments. The reconsideration decision is a form letter. It contains no discussion or acknowledgement of the facts specific to this Plaintiff, the arguments presented in the request for reconsideration, the authority CMS relied on to render its decision, or the rationale for CMS' decision. In addition, the reconsideration does not acknowledge that the Plaintiff submitted *all* 2018 quality data on time. Importantly, the reconsideration decision does not discuss the Plaintiff's documentation showing that the Plaintiff reported all quality data prior to the applicable deadlines. The reconsideration does not provide a single reason for upholding the two percent payment reduction, except for the form statement that CMS "reviewed your reconsideration request and decided to uphold the decision to grant the reduced FY 2020 APU [Annual Payment Update]." The letter does not state the evidence CMS relied on and it does not provide any rationale for CMS' decision.

35. On October 24, 2019, the Plaintiff timely appealed CMS' reconsideration decision to the PRRB and met the jurisdictional requirements for a hearing.

36. After a live hearing held on March 31, 2021, the PRRB issued a decision on September 27, 2023 upholding CMS' reconsideration decision. The PRRB did not find that the Plaintiff failed to report all quality data by the applicable deadlines; rather, the PRRB concluded that the Plaintiff's evidence did not confirm full compliance because of an administrative error that that resulted in certain monthly reporting plans for the CAUTI, CLABSI, CDI, and VAE measures that were not created in the form and manner required by CMS. The PRRB said that monthly reporting plans are created or updated for the hospital's quality data to be shared with CMS (*i.e.*, for the CDC to transmit the quality data to CMS).

37. The PRRB also rejected the Plaintiff's argument that the extenuating circumstances standard required reversal of the payment penalty. The PRRB stated that the

extenuating circumstances standard CMS adopted in the FY 2015 IPPS/LTCH PPS Final Rule was the wrong standard for determining whether to excuse any failure to report data for the LTCH QRP. Instead, the PRRB claimed that it is only the "narrower standard" of "extraordinary circumstances beyond the control of the [LTCH]" from 42 C.F.R. § 412.560(c) that applied to Plaintiff's appeal. Although the Plaintiff did not raise any arguments regarding the extraordinary circumstances standard, the PRRB concluded that the Plaintiff did not satisfy this standard for excusing noncompliance because there were no circumstances beyond Plaintiff's control.

38. The PRRB's decision also stated that, even if the extenuating circumstances standard applied, the Plaintiff's evidence did not support a finding of extenuating circumstances. In reaching this conclusion, the PRRB did not address any of the evidence in the record or attempt to explain why the evidence was insufficient. Instead, the PRRB summarily decided that the Plaintiff did not provide any basis for reversing the payment penalty. The PRRB's decision claimed that qualifying extenuating circumstances are limited to extraordinary circumstances.

39. Finally, the PRRB concluded that it did not need to address any of the Plaintiff's remaining arguments. The Plaintiff argued before the PRRB that the CMS reconsideration violated the APA because it ignored the LTCH QRP reconsideration procedures and was contrary to the intent of the LTCH QRP. The PRRB's decision stated that because the PRRB conducted an evidentiary hearing *de novo*, the PRRB did not need to address all of the Plaintiff's arguments.

40. For these reasons, the PRRB upheld the two percent reduction to Plaintiff's Medicare payments for FY 2020. The PRRB's decision is attached as **Exhibit A** to this Complaint.

41. On October 27, 2023, the CMS Administrator declined to review the PRRB's

decision. The Administrator's letter declining review of the PRRB's decision is attached as **Exhibit B** to this Complaint.

42. Pursuant to 42 U.S.C. § 1395oo(f)(1), the Complaint has been filed within 60 days of receipt by Plaintiff of the PRRB's final decision in this case.

## REVERSAL OF THE PRRB'S DECISION

43. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42 above as if fully stated herein.

44. The PRRB's decision to uphold the two percent penalty against Plaintiff was arbitrary, capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence, for the following reasons, among others:

(a) **The Plaintiff's Evidence Shows that It Fully Reported Data on All Applicable Quality Measures Before Each Reporting Deadline**

The Plaintiff timely reported all required data to the CDC's NHSN system before every reporting deadline for the FY 2020 payment determination. Specifically, the Plaintiff's evidence confirms that it submitted all quality data for the first quarter of 2018 by August 15, 2018, and all quality data for the second quarter by November 15, 2018. Consequently, the primary basis for reversing the payment penalty applies here because the Plaintiff demonstrated full compliance. 79 Fed. Reg. at 50317. The Plaintiff reported all quality data for each month of the reporting period. Even if there was an issue with the checkboxes for selecting measures on the Plaintiff's monthly reporting plans, it did not change the fact that the NHSN had all of the Plaintiff's quality data by the applicable LTCH QRP reporting deadlines. Furthermore, the monthly reporting plans are not quality data subject to the two percent payment penalty. Accordingly, substantial evidence does not support the PRRB's finding that the Plaintiff failed to properly submit data for the CAUTI, CLABSI, VAE, and CDI measures. The Plaintiff's evidence shows "[f]ull

compliance with all LTCHQR Program reporting requirements during the reporting period." 79 Fed. Reg. at 50317. There was no valid basis for the PRRB to affirm CMS' payment penalty.

  (b) **The Plaintiff's Evidence Also Supports a Finding of Extenuating Circumstances that Affected Any Perceived Noncompliance**

If the PRRB did not conclude that there was full compliance by the Plaintiff with the LTCH QRP, then the evidence clearly supported a finding of "extenuating circumstances" that required reversal of the payment penalty. Plaintiff's documentation submitted to CMS and the PRRB shows that Plaintiff timely submitted all quality reporting data to the NHSN system, which is proof of compliance with all requirements during the reporting period. However, to the extent that CMS did not receive the data submitted to the CDC's NHSN system, the Plaintiff asserts that it was the result of a typo or technical error with the NHSN system, rather than a failure of the Plaintiff to submit the quality data prior to the applicable reporting deadlines. The failure of the NHSN system to prevent a penalty in this situation is also an extenuating circumstance that should have led to reversal of the payment penalty. CMS and the NHSN system did not alert or otherwise notify the Plaintiff before the reporting deadlines of any issue with the submitted data or the monthly reporting plans. Therefore, Plaintiff's evidence shows "extenuating circumstances that affected noncompliance if the LTCH was not able to comply with the requirements during the reporting period." 79 Fed. Reg. at 50317. As a result, substantial evidence does not support the PRRB's finding that there were no extenuating circumstances.

  (c) **The PRRB Decision Improperly Affirmed CMS' Decision that Violates the APA and Failed to Adhere to Established LTCH QRP Reconsideration Procedures**

The PRRB decision violated the APA's arbitrary and capricious standard and should be reversed because it affirmed a CMS reconsideration that ignored the Plaintiff's arguments and

evidence of full compliance and extenuating circumstances. The reconsideration clearly violates the APA because the agency failed to follow the reconsideration procedures set forth in the Federal Register. The PRRB should have reversed CMS' reconsideration decision because CMS did not adhere to the standards of review established at 42 C.F.R. § 412.560(d)(2) and in the preamble to the FY 2015 IPPS/LTCH PPS Final Rule. Under this regulation, CMS must reverse the initial finding of noncompliance if the reasons for requesting reconsideration are supported by "documentation that demonstrates compliance of the long-term care hospital with the quality reporting requirements." 42 C.F.R. § 412.560(d)(2)(vii). The FY 2015 IPPS/LTCH PPS Final Rule further specifies that CMS must reverse the initial determination based on the LTCH's "supporting documentation and evidence demonstrating: (1) Full compliance with all LTCHQR Program reporting requirements during the reporting period; or (2) extenuating circumstances that affected noncompliance if the LTCH was not able to comply with the requirements during the reporting period." 79 Fed. Reg. at 50317. The reconsideration provides no indication that CMS followed the process set out in the regulation and the binding language in the preamble to determine whether the initial determination of noncompliance should be reversed.

By using a form letter that failed to consider the Plaintiff's arguments and evidence in its request for reconsideration, and making only conclusory statements, the reconsideration does not reflect that CMS engaged in reasoned decision-making. The Plaintiff's August 7, 2019 request for reconsideration provided CMS with proof of timely reporting of all 2018 data for the CAUTI (NQF #0138), CLABSI (NQF #0139), CDI (NQF #1717), and VAE outcome measures. Plaintiff's request for reconsideration included data submission reports showing that the Plaintiff timely reported all quality data during 2018 for these four measures using the required NHSN system operated by the CDC. Specifically, the Plaintiff's request for reconsideration contained

NHSN Event Data reports showing the Plaintiff submitted all CAUTI, CLABSI, CDI, and VAE event data, the NHSN Line Listing for All Events report confirming that the Plaintiff timely reported all of its first and second quarter CAUTI, CLABSI, CDI, and VAE events data prior to the August 15, 2018 and November 15, 2018 deadlines, and the NHSN Line Listing for All Summary Data report demonstrating that the Plaintiff reported summary data (*e.g.*, number of patient days) prior to these quarterly deadlines. Consequently, the payment penalty should have been reversed because the Plaintiff provided CMS, and the PRRB, with documentation demonstrating compliance with all LTCH QRP requirements. Although CMS states in the letter that it reviewed the reconsideration request submitted by the Plaintiff, the reconsideration includes no discussion of the Plaintiff's supporting documentation and evidence demonstrating full compliance with the LTCH QRP for the FY 2020 payment determination and extenuating circumstances. Moreover, the reconsideration fails to provide any explanation for the payment penalty. The PRRB should have reversed the two percent payment penalty because CMS did not adhere to the standards of review or otherwise follow the established LTCH QRP reconsideration process.

Agency actions, findings and conclusions are arbitrary and capricious if the agency did not "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). The APA "mandat[es] that an agency take whatever steps it needs to provide an explanation that will enable [the reviewer] to evaluate the agency's rationale at the time of decision." *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990). An agency action, finding or conclusion clearly violates the APA's arbitrary and capricious standard when it

"provides no basis upon which [the reviewer] could conclude that it was the product of reasoned decisionmaking." *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001). Agency decisions using form letters that make no findings of fact and contain only summary conclusions are not affirmed by courts because the court cannot "assess whether the action was the product of reasoned decisionmaking." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1578 (10th Cir. 1994) (citing *State Farm*, 463 U.S. at 43, 50, 52-57). CMS' reconsideration decision here is a one page form letter. The reconsideration does not include any discussion of the Plaintiff's arguments establishing proof of compliance with the LTCH QRP for the FY 2020 payment determination. Furthermore, the reconsideration does not address the evidence that the Plaintiff included with its request for reconsideration. Accordingly, the reconsideration does not show that CMS "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *State Farm*, 463 U.S. at 43. Therefore, the PRRB should have reversed the reconsideration because it was arbitrary and capricious under the APA.

Moreover, the PRRB decision is itself arbitrary and capricious because it said it was considering the correct LTCH QRP standards of review but then applied them incorrectly, even though this Court explained their meaning and the Plaintiff clearly briefed these standards of review in its filings with the PRRB. Indeed, one member of this Court issued two separate decisions finding that three PRRB decisions violated the APA's arbitrary and capricious standard because they misapplied CMS' rules for the LTCH QRP reconsideration process. *Landmark Hosp. of Salt Lake City v. Azar and Landmark Hosp. of Savannah v. Azar*, 442 F. Supp. 3d 327 (D.D.C. 2020); *PAM Squared at Texarkana, LLC v. Azar*, 436 F. Supp. 3d 52 (D.D.C. 2020). Despite the benefit of the Court's decisions in these prior cases, the PRRB still applied the wrong LTCH QRP rules to the Plaintiff's appeal. The PRRB claimed that the extenuating circumstances

standard did not apply to Plaintiff's appeal, despite CMS adopting this standard in the FY 2015 IPPS/LTCH PPS Final Rule. 79 Fed. Reg. at 50317-18. Instead, the PRRB evaluated Plaintiff's appeal under the narrower extraordinary circumstances standard that CMS uses for the disaster waiver process. This was incorrect. According to CMS, the extenuating circumstances standard for LTCH QRP appeals is separate and distinct from the disaster wavier process. Even when the PRRB briefly addressed the extenuating circumstances standard, it incorrectly stated that extenuating circumstances are limited to extraordinary circumstances. This Court held that the PRRB's use of the wrong LTCH QRP standards "was prototypically arbitrary and capricious." *Landmark Hosp. of Salt Lake City*, 442 F. Supp. 3d at 334. The PRRB committed the same error here and therefore violated the APA's arbitrary and capricious standard. Moreover, by disregarding this Court's earlier decisions, the PRRB's decision is not in accordance with law. *See Georgetown Univ. Hosp. v. Bowen*, 698 F. Supp. 290, 297 (D.D.C. 1987) (an agency's decision is not in accordance with law under 5 U.S.C. § 706(2)(A) when the decision "directly conflicts with a final and binding court precedent").

Finally, the PRRB decision violates the APA because it failed to address several important arguments that the Plaintiff raised during the PRRB proceedings. An agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), if "the agency . . . entirely failed to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43. The Plaintiff argued before the PRRB that the CMS reconsideration decision violated the APA and ignored the LTCH QRP reconsideration procedures. As discussed more fully below, the Plaintiff also argued before the PRRB that imposing the two percent payment penalty is contrary to the intent of the LTCH QRP and precluded by the doctrine of substantial compliance. The PRRB's decision did not respond to

any of these arguments. Instead, the PRRB stated that it would not address these arguments simply because the PRRB conducted its own *de novo* evidentiary hearing. By declining to engage with the Plaintiff's arguments, the PRRB did not "examine the relevant data" and "failed to consider an important aspect of the problem." *Id.*; *see also Baptist Med. Ctr. v. Burwell*, No. 1:11-cv-0899, 2015 WL 13808477, at *11 (D.D.C. Aug. 24, 2015) (Harvey, M.J.) (concluding that a PRRB decision was arbitrary and capricious when it ignored evidence presented by a hospital and did not engage with the hospital's argument). The Plaintiff asserts that these arguments are equally dispositive that the agency's determination of LTCH QRP noncompliance, and the associated payment penalty, are incorrect. Thus, the PRRB's ruling here that it did not need to respond to the Plaintiff's arguments is arbitrary and capricious.

      (d)    **Applying the Payment Penalty to Plaintiff is Contrary to the Intent of the LTCH QRP**

The purpose of the LTCH QRP is to promote higher quality care and to provide information about quality to the public. *See generally* 76 Fed. Reg. 51476, 51743-44 (Aug. 18, 2011). Applying a full two percent reduction to Plaintiff does not effectuate that purpose because the Plaintiff did timely submit all required LTCH QRP data in 2018. Imposing the two percent payment penalty on this Plaintiff based on a typo or technical issues with reporting plans in the NHSN system, when all quality data were timely reported to NHSN, is inconsistent with the intent and goals of the LTCH QRP. Applying the penalty in this situation does not "promote higher quality and more efficient health care for Medicare beneficiaries." *Id.* at 51743. No quality data were missing and there is no more quality data that the Plaintiff could have submitted. HHS had all of the Plaintiff's quality data on time. For these reasons, applying the penalty in this situation does not help CMS or the hospital with "informed decision-making and quality improvement." *Id.* at 51750. Therefore, the payment penalty in this case is contrary to the

intent of the LTCH QRP.

      (e)    **The Court Also Should Reverse the LTCH QRP Payment Penalty on Equitable Grounds**

The Plaintiff's documentation confirms that Plaintiff timely reported all required quality data for each month at issue. Even if the Court believes that the Plaintiff's evidence does not demonstrate proof of full compliance, it should reverse the payment penalty on equitable grounds.

The Plaintiff submitted all required LTCH QRP data, but a technical error or typo with the reporting plans in the NHSN system led CMS to believe the Plaintiff was noncompliant. CMS is not missing any quality data from the Plaintiff for the FY 2020 payment determination. In fact, all data were reported to NHSN and available to CMS before the notice of noncompliance was issued on July 16, 2019. At most, one arm of HHS, the CDC, did not share the Plaintiff's quality data with another arm of HHS, the CMS.

The NHSN system's shortcomings led the Plaintiff to believe that its quality data would be transmitted to CMS because the NHSN system did not notify the Plaintiff of any errors. The Plaintiff should not be penalized for these NHSN system failures. The Plaintiff made a good faith effort to comply with all requirements of the LTCH QRP, and the doctrine of substantial compliance precludes application of the penalty in this case.

  CMS failed to use equitable discretion on reconsideration of the LTCH QRP two percent reduction to the Plaintiff's FY 2020 Medicare payments. The PRRB also failed to consider the Plaintiff's arguments about equitable considerations supporting reversal of this payment penalty. Therefore, the Court should exercise its equitable powers to reverse the payment penalty for the reasons discussed above.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for judgment against Defendant as follows:**

45. For an order reversing the final decision of the PRRB and declaring that Plaintiff is entitled to the full Medicare Annual Payment Update for fiscal year 2020;

46. For an order compelling the full payment for any amounts that have been recovered or withheld from Plaintiff as a result of the reduction of Plaintiff's Medicare Annual Payment Update for fiscal year 2020 due to Plaintiff's alleged failure to submit data in accordance with the requirements of the LTCH QRP, which totals approximately $256,885, before interest, fees and other costs;

47. That the Court award Plaintiff prejudgment interest to which it is entitled to as a matter of right under 42 U.S.C. § 1395oo(f)(2);

48. That the court award Plaintiff's costs and legal fees pursuant to 28 U.S.C. § 2412; and

49. That the Court grant to Plaintiff such other and further relief that the Court deems proper.

Dated: November 16, 2023                                   Respectfully submitted,

  /s/ *Jason M. Healy*
Jason M. Healy (D.C. Bar No. 468569)
THE LAW OFFICES OF
JASON M. HEALY PLLC
1701 Pennsylvania Ave., N.W.
Suite 200
Washington, DC 20006
(202) 706-7926
(888) 503-1585 (fax)
jhealy@healylawdc.com

*Attorney for Plaintiff*